UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GARY LA BARBERA, et al.,

           Plaintiffs,

- against -

ELITE READY MIX CORP.,

           Defendant.
-----------------------------------------------------------X

GARY LA BARBERA, et al.,

           Plaintiffs,

- against -

GRECO BROS. CONCRETE OF LONG
ISLAND INC.,

           Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

08 CV 3860 (CPS)

08 CV 3861 (CPS)

On September 22, 2008, plaintiffs, Trustees of Local 282 of the International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds (the "Funds"), filed two separate actions against defendants Elite Ready Mix Corporation ("Elite"), 08 CV 3860, and Greco Brothers Concrete of Long Island Inc. ("Greco"), 08 CV 3861 (collectively "defendants"[1]), pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), seeking to compel defendants to pay

---

[1]Plaintiffs allege that Greco and Elite are two interrelated companies which are represented by the same counsel in these actions, and for purposes of this lawsuit the cases have been consolidated.

delinquent contributions owed to the Funds and delinquency charges. (Elite Compl.[2] ¶¶ 13-15; Greco Compl. ¶¶ 13-15). In addition, plaintiffs seek to enjoin defendants from further violations of the Collective Bargaining Agreement in effect with Local 282 of the International Brotherhood of Teamsters (the "Union"). (Elite Compl. at 6; Greco Compl. at 6).

Following the filing of the Complaints, both defendants made offers of judgment to the plaintiffs pursuant to Rule 68 of the Federal Rules of Civil Procedure. (Pl. Greco Repl.[3] ¶ 15; Ex. B; Pl. Elite Repl. ¶ 15; Ex. A). Although these offers to settle were rejected by plaintiffs (Pl. Greco Repl. ¶ 15; Pl. Elite Repl. ¶ 15), the parties ultimately negotiated settlements in both cases. On November 17, 2008, the district judge entered an Order that Stipulations of Settlement ("Stipulations") had been reached between the parties in both cases.

Thereafter, on November 25, 2008, counsel for plaintiffs filed a motion seeking to have judgment entered in favor of the plaintiffs in both cases based on defendants' alleged failure to comply with the terms of their respective Stipulations. On February 6, 2009, the district court referred these two companion cases to the undersigned to assess the defendants' claims that the Stipulations of Settlement between the plaintiffs and the defendants do not accurately reflect the intended agreement between the parties and, if necessary, to calculate the amount of damages owed in each case. On June 30, 2009, this Court held a hearing and heard testimony from both

---

[2] Citations to "Elite Compl." refer to plaintiffs' Complaint filed against Elite Ready Mix Corp., 08 CV 3860; citations to "Greco Compl." refer to plaintiffs' Complaint filed against Greco Bros. Concrete of Long Island Inc., 08 CV 3861. Both complaints were filed on September 22, 2008.

[3] Citations to "Pl. Greco Repl." and Pl. Elite Repl." refer to the plaintiffs' Reply in Affirmation in Support of Judgment Damages against Greco Brothers Concrete of Long Island, Inc. and against Elite Ready Mix Corporation Inc., respectively, each filed on March 13, 2009.

2

the defendants' counsel and the plaintiffs' counsel, both of whom participated in the negotiations leading up to the final Stipulations. Based on the testimony of counsel and the clear language of the Stipulations, the Court finds in favor of plaintiffs and respectfully recommends that default judgments enter against both Elite and Greco.

## FACTUAL BACKGROUND

According to the Complaints, plaintiffs are trustees of multi-employer benefit plan trusts that provide fringe benefits to employees performing services within the jurisdiction of the Union. (Elite Compl. ¶¶ 3-4; Greco Compl. ¶¶ 2-3). Defendant Elite is a corporation with its principal place of business located in Hunts Point, New York. (Elite Compl. ¶ 6). Defendant Greco is a corporation with its principal place of business located in Ozone Park, New York. (Greco Compl. ¶ 6). Both defendants are signatories to a Collective Bargaining Agreement with the Union (the "CBA") from at least May of 2008. (Elite Compl. ¶ 9; Greco Compl. ¶ 9). Pursuant to the CBA, defendants are required to pay fringe benefit contributions to the Funds based on work performed by the individual employees of defendants. (Elite Compl. ¶ 9; Greco Compl. ¶ 9). The CBA also requires employers to submit remittance report forms and to allow plaintiffs to examine and audit the pertinent payroll books and records of the employers to insure that the proper number of hours are credited to the individual employees. (Elite Compl. at 6; Greco Compl. at 6).

Plaintiffs allege that defendant Elite failed to submit remittance reports or pay contributions covering the periods May through August 2008. (Elite Compl. ¶ 9). Plaintiffs also allege that defendant Greco failed to submit reports and pay contributions for the period

3

from May through August 2008. (Greco Compl. ¶ 9).[4]

On September 22, 2008, plaintiffs filed these ERISA actions seeking to compel defendants to pay any delinquent contributions, plus interest, liquidated damages, audit fees, and attorneys' fees and costs, as authorized by 29 U.S.C. § 1132. By separate Stipulations signed on November 7, 2008 and entered by the Court on November 17, 2008, the parties reached an agreement to settle the plaintiffs' claims.

By Notice of Motion dated November 25, 2008, plaintiffs moved for entry of default judgment on the grounds that defendants failed to comply with the terms of the Stipulations under which each defendant was required to keep current with their future remittance reports and make payments to the Funds in a timely manner as set forth in the CBA, starting with the month of September 2008. (Pl. Greco Aff.[5] ¶ 5; Pl. Elite Aff. ¶ 5). According to plaintiffs, failure to remain current on remittance reports and contributions constitutes an event of default which, under the Stipulations, permits plaintiffs to enter judgment for the full amount owed.

Plaintiffs note that under the CBA, defendants were obligated to submit the report and payment for the month of September 2008 by November 15, 2008; as of November 25, 2008, plaintiffs had not received a payment from either defendant. (Id.) As a result, plaintiffs now argue that, by the terms of their respective Stipulations, both defendants are in default and

---

[4]The original Complaints sought payment of past contributions only for the periods of May and June 2008. (Elite Compl. ¶ 9; Greco Compl. ¶ 9). In the Stipulations of Settlement signed by all parties on November 7, 2008, it was agreed that the Complaints would be amended to include the months of July and August 2008, for which defendants also incurred delinquencies.

[5]Citations to "Pl. Greco Aff." and "Pl. Elite Aff." refer to the plaintiffs' Affirmation in Support of Damages for Judgment against Greco Brothers Concrete of Long Island, Inc. and against Elite Ready Mix Corporation, Inc., respectively, each filed on March 5, 2009.

4

judgment should enter in plaintiffs' favor. Plaintiffs seek $162,336.33 in unpaid contributions from defendant Elite, plus attorneys' fees and various other late fees; plaintiffs seek $33,429.09 in unpaid contributions from defendant Greco, plus attorneys' fees and various other late fees. (Pl. Elite Aff. ¶ 7; Pl. Greco Aff. ¶ 7).

Both defendants oppose plaintiffs' motions for entry of default judgment, contending that, in agreeing to enter into the two Stipulations, plaintiffs and defendants agreed to provide notice and cure provisions that would apply to "future obligations that become due under the collective bargaining agreement." (Def. Greco Aff.[6] ¶¶ 7, 9; Def. Elite Aff. ¶¶ 7, 9). Defendants contend that the Stipulations do not accurately reflect this intended agreement of the parties. Defendants further argue that because plaintiffs failed to send notice to the defendants that they were delinquent on their September payments, defendants were deprived of an opportunity to cure the delinquencies. As a result, defendants argue that plaintiffs are not entitled to entry of a default judgment against either defendant. (Def. Ltr.[7] at 1).[8]

In response, plaintiffs dispute the claim that the parties agreed to a notice and cure provision with respect to the obligation to pay current and future contributions. Plaintiffs argue

---

[6]Citations to "Def. Greco Aff." and "Def. Elite Aff." refer to the Affirmation in Opposition to Entry of Judgment submitted by defendant's counsel Alexander Miuccio, Esq., on behalf of Greco Brothers Concrete of Long Island, Inc., and on behalf of Elite Ready Mix Corporation, respectively, both submitted on March 10, 2009.

[7]Citations to "Def. Ltr." refer to the letter brief filed by defendants' counsel Alexander Miuccio, Esq., on July 10, 2009.

[8]Defendants also dispute the amounts sought by plaintiffs as damages in the event that defendants are found to be in default, and they have requested a hearing to address these issues. (Def. Greco Aff. ¶ 13). The Court has deferred consideration of the damages claims pending resolution of the question of default.

5

that the clear language of both Stipulations demonstrates that plaintiffs were under no obligation to provide such notice with respect to current and future contributions. (Pl. Ltr.[9] at 2).

## DISCUSSION

In each of the two cases before this Court, the relevant fact patterns and legal issues are essentially identical. To determine whether the plaintiffs are entitled to entry of a default judgment, this Court must consider: (1) whether, by the terms of the Stipulations, either defendant was entitled to receive notice and a grace period to cure any delinquencies before default judgment was entered against it; and (2) if not, whether other grounds exist for the Court to reform the terms of the Stipulations. If either defendant is found to be in default, the Court has also been asked to conduct an inquest hearing and recommend damages owed to the plaintiffs in each case.

A. Contract Language

Under New York law, the intent of the parties as expressed in a written contract governs, and the intent must be ascertained from the plain meaning of the language employed. See Painewebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996); Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992). It is well-established that "'[a] contract should be construed so as to give full meaning and effect to all of its provisions.'" Painewebber Inc. v. Bybyk, 81 F.3d at 1199 (citations omitted). In doing so, "'[w]ords and phrases are given their plain meaning.'"

---

[9]Citations to "Pl. Ltr." refer to the letter brief filed by plaintiffs' counsel Avram Schreiber, Esq., on July 10, 2009.

Id. (citations omitted); see also Federal Deposit Ins. Corp. v. Bernstein, 786 F. Supp. 170, 178 (E.D.N.Y. 1992). When the parties' intent can be determined from the plain language of an agreement, extrinsic evidence may not be considered. Cruden v. Bank of New York, 957 F.2d at 976; see also United States Trust Co. of New York v. Jenner, 168 F.3d 630, 632 (2d Cir. 1999); Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir 1993) (citing cases).

Moreover, "in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (citing Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416, 125 N.E. 814, 816 (1920)); see also Machne Menachem, Inc. v. Hershkop, 237 F. Supp. 2d 227, 238-39 (E.D.N.Y. 2002) (holding that the law generally assumes that a person who signed a document read it and understood it). As a result, "to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to . . . contradict what is written, would be dangerous and unjust in the extreme." Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1177 (2d Cir. 1995) (internal citations omitted), cert. denied, 517 U.S. 1119 (1996).

The determination of whether a contract is ambiguous is a question of law for the court. See Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996); Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 429 (2d Cir. 1992). "[A]mbiguous language" is defined as language that is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d at 428

(internal citations omitted); accord Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996); see also Roberts v. Consolidated Rail Corp, 893 F.2d 21, 24 (2d Cir. 1989) (defining a provision as ambiguous "where a natural and reasonable reading of its language allows for two or more possible meanings") (internal citations omitted). However, a contract provision is not ambiguous simply because the parties offer different interpretations of the language. See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993); Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d at 428. "Nor does ambiguity exist where one party's view strain[s] the contract language beyond its reasonable and ordinary meaning." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d at 428 (internal citations omitted); see also Scelsa v. City University of N.Y., 76 F.3d 37, 41 (2d Cir. 1996).

In determining whether a provision is ambiguous, a court must consider the entire contract to avoid adopting an interpretation that would result in an inconsistency between provisions or that would render a particular provision superfluous. See Cruden v. Bank of New York, 957 F.2d at 976; Monaghan v. SZS 33 Assocs., L.P., 875 F. Supp. 1037, 1043 (S.D.N.Y. 1995). Similarly, a basic principle of contract construction is that particular language prevails over general language in determining the meaning of a contract provision. See United States v. Local 6A, Cement & Concrete Workers, Laborers Int'l Union of N. America, 832 F. Supp. 674, 679-80 (S.D.N.Y. 1993). Moreover, a court "'should construe ambiguous language against the interest of the party that drafted it.'" Painewebber Inc. v. Bybyk, 81 F.3d at 1199 (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995)).

If, and only if, a contract provision is found to be ambiguous, a court may look to the acts of the parties and the circumstances surrounding the drafting of the disputed provision to

determine the parties' intent. See Roberts v. Consolidated Rail Corp., 893 F.2d at 24; General Electric Capital Corp. v. Eva Armadora S.A., 821 F. Supp. 1530, 1545 (S.D.N.Y. 1993), rev'd on other grounds, 37 F.3d 41 (2d Cir. 1994). Thus, where a contract term is ambiguous, parol evidence may be admitted to explain, but not to modify, the terms of the agreement. See General Electric Capital Corp. v. Eva Armadora S.A., 821 F. Supp. at 1545-46; Stratford Group, Ltd. v. Interstate Bakeries Corp., 590 F. Supp. 859, 864 (S.D.N.Y. 1984).

1. The Stipulations

With the exception of referring to different parties and to different dollar amounts, the language and content of the Stipulation between plaintiffs and Greco and that between plaintiffs and Elite are identical. The first two paragraphs of each Stipulation address the parties' agreed-upon resolution of defendants' past delinquencies, providing for the payment by each defendant of reduced amounts in satisfaction of the amounts owed. Specifically, in its first paragraph, the Elite Stipulation provides that the defendant "acknowledges that for the periods of May 2008 through August 2008 there remains due and owing to the Plaintiffs the sum of $84,160.03." (Elite Stip.[10] ¶ 1). The Greco Stipulation's first paragraph is identical, except that the amount owed is $300,175.47. (Greco Stip. ¶ 1). Similarly, the second paragraphs of the Elite and Greco Stipulations are identical with the exception of the amounts agreed to be paid. The Elite Stipulation provides that "in payment of the amounts set forth in paragraph 1 above . . . Defendant agrees to pay . . . the sum of $51,808.03" by December 1, 2008. (Elite Stip. ¶ 2). The Greco Stipulation provides for the payment of $137,839.14. (Greco Stip. ¶ 2). The third

---

[10]Citations to "Elite Stip." and "Greco Stip." refer to the Stipulations of Settlement between Labarbera and Elite and between Labarbera and Greco, each signed by the district judge on November 14, 2008.

paragraphs of both Stipulations focuses on defendants' current and future obligations. Paragraph 3 requires the defendants to "keep current, strictly in accordance with the terms of the collective bargaining agreement, in submitting its reports and payments to Plaintiffs, which become due and owing, beginning with the reports and payments due for the period of September 2008, which are due November 15, 2008." (Elite Stip. ¶ 3; Greco Stip. ¶ 3). Under the terms of the CBA referenced in paragraph 3, the defendants are obligated to submit monthly contributions to the Funds no later than 45 days after the close of each month being reported. (Pl. Ltr. at 1).

The fourth paragraph of each Stipulation sets forth the consequences in the event that defendants failed to make payments as required under the stipulations. Paragraph 4 of the Stipulations provides:

> In the event Defendant fails to make any payment required under paragraph 2 above, or if any check presented in payment of an amount set forth in paragraph 2 or paragraph 3 above is returned unpaid, then Defendant shall be entitled to five (5) business days notice, sent to Alex Miuccio, Esq. the attorney for the Defendant by facsimile at 646-349-2635, and to the Defendant . . . within which to cure the default. This notice provision and cure period shall apply to the payments required under paragraph 2 alone. In the event that Defendant fails to cure any default as related in paragraph 2 above, or fails to make payment of any current contributions as related to paragraph 3 above, then Plaintiffs may enter Judgment for the full amount set forth in paragraph 1 above, together with interest and additional attorneys' fees incurred from October 17, 2008. Defendant shall be entitled to credit for any payment actually received pursuant to the payment schedule set forth in paragraph 2 above.

(Elite Stip. ¶ 4; Greco Stip. ¶ 4)

Defendants argue that an "ordinary reading" of the Stipulations indicates that the notice and cure provision set forth in paragraph 4 applies both to payments of past obligations under paragraph 2 and to current and continuing obligations referred to in paragraph 3. (Def. Ltr. at 2). Defendants base their claim on the fact that while the first sentence of paragraph 4 discusses

10

bounced checks or checks returned unpaid, the second sentence of paragraph 4, in which the conditions under which plaintiff may enter judgment are set down, makes no mention of such bounced checks as they relate to "current contributions due." (Def. Ltr. at 3). Thus, defendants contend that because plaintiffs failed to give notice to the defendants when the September contributions were late, this provision of the Stipulation precludes entry of default against the defendants. (Id.)

Plaintiffs contend that the notice and cure provision does not apply to defendants' failure to keep current on contributions; rather, the clear language of the Stipulations states that the notice and cure provision applies to only two specific situations: (1) when a defendant has failed to submit a contribution required to satisfy past contributions obligations, as outlined in paragraph 2; or (2) when a check used to pay either past obligations due under paragraph 2 or continuing contribution obligations due under paragraph 3 bounces and is returned unpaid. (Pl.'s Ltr. at 2).

The Court finds that the language of the Stipulations is not ambiguous, and that plaintiff's reading of the agreements is the only plausible interpretation. Notably, there is no mention of an entitlement to notice and an opportunity to cure in the event that a defendant fails to submit a contribution required as part of its continuing obligations described in each Stipulation's paragraph 3. Consistent with this reading is the sentence in paragraph 4 that reads: "This notice provision and cure period shall apply to the payments required under paragraph 2 alone." This explicitly refers to payments in settlement of past amounts owed. Further corroborating plaintiffs' interpretation is the final sentence of paragraph 4, which provides for entry of default judgment if a defendant fails to cure any default in a past payment as described in paragraph 2 or

when a defendant fails to pay current contributions as described in paragraph 3, which specifies payment "in accordance with the terms of the CBA." Although the inclusion of the provision for notice related to bounced checks for either past or current contribution obligations may have appeared confusing to defendants, a careful reading of the paragraph demonstrates that the plaintiff's reading of the language is correct. Plaintiffs were required under the Stipulations to give notice only when defendants failed to pay the amounts due for the past delinquencies; there was no right to cure given with respect to future obligations because those payments were to be made in accordance with the terms of the CBA where no right to notice and cure is given. Based on these clauses, in the event that the defendants fail to pay their respective current contributions in accordance with the terms of the CBA, the defendants are not entitled to notice before the plaintiffs enter a default judgment against them. Thus, the unambiguous language of the Stipulations permits the plaintiffs to enter a judgment of default in each case without first having to provide notice and an opportunity to cure.

B. Reformation

Defendants argue that the intent of the parties was to provide notice and an opportunity for cure for both past and future contributions and ask the Court to reform the Stipulations to reflect this intent. (Def. Ltr. at 2). Since the text of the Stipulations unambiguously permits the plaintiffs to enter judgment against the defendants, this Court must now consider whether any circumstances exist that justify the reformation of either Stipulation.

Under New York law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively

presumed to know its contents and to assent to them." Gold v. Deutsche Aktiengesellschaft, 365 F.3d at 149 (internal citations omitted); see also Machne Menachem, Inc. v. Hershkop, 237 F. Supp. 2d at 238-39 (noting that the law generally assumes that a person who signed a document read it and understood it). As a result, under New York law, a party's unilateral mistakes do not justify reformation of a contract. Healy v. Rich Products Corp., 981 F.2d 68, 73 (2d Cir. 1992).

Furthermore, the fact that a court considers the terms of a contract as written to be improper, illogical or even oppressive does not justify reformation unless both parties assent. It may well be the case, as defendants' counsel argues in his letter brief, that the Stipulations' terms "def[y] common sense," insofar as it appears counter-intuitive to provide notice in the event of a bounced check sent in payment of current contributions, but not in the event that defendants fail to pay current contributions at all. (Def. Ltr. at 4).[11] However, given the unambiguous language used in both agreements, even if this Court were convinced that the terms of the Stipulations as written were not particularly logical or sensible, such a conclusion would not justify reformation of the Stipulations. See Tinter v. Tinter, 96 A.D.2d 556, 557, 465 N.Y.S.2d 238, 239 (2d Dep't 1983) (citing Leffler v. Leffler, 50 A.D.2d 93, 95, 376 N.Y.S.2d 176 (1st Dep't 1975), aff'd 40 N.Y.2d 1036, 391 N.Y.S.2d 855, 360 N.E.2d 355) (holding that "a court cannot reform an agreement to conform to what it thinks is proper, if the parties have not assented to such a reformation"); Cohen-Davidson v. Davidson, 291 A.D.2d 474, 475, 740 N.Y.S.2d 68, 70 (2d Dep't 2002). Additionally, even if the Court found the terms of the Stipulations to be unfair or

---

[11] Perhaps the reason that defendants are given an opportunity to cure in the event of a bounced check is that they have taken steps to pay currently owed contributions but, as sometimes happens, through bank error or no fault of their own, their check is not honored. When they make no effort to pay as they are required to do under the CBA, plaintiffs have not agreed to give them notice.

otherwise oppressive, "[r]eformation will not be granted 'for the purpose of alleviating a hard or oppressive bargain,' but only to restore the intent of the parties." Aviall, Inc. v. Ryder Sys., Inc., 913 F. Supp. 826, 833 (S.D.N.Y. 1996) (citing George Backer Mgmt. Corp. v. Acme Quilting Co., 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 139, 385 N.E.2d 1062, 1066 (1978)). As a result, even if this Court found the terms of the Stipulations to be counter-intuitive or oppressive, such a finding would not justify reformation.

New York law does permit the reformation of a contract in the event of a mutual mistake. As the law has evolved, mutual mistake may furnish the basis for reformation of a written instrument when the parties have reached an oral agreement and, unknown to either, the signed agreement does not express that agreement. See Princeton Restoration Corp. v. Int'l Fid. Ins. Co., 338 F. Supp. 2d 391, 393 (E.D.N.Y. 2004) (citing Chimart Assoc. v. Paul, 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986)). However, because New York law presumes that a signed agreement reflects the true intent of the parties, it imposes a high burden on the party seeking reformation -- namely the burden of providing clear and convincing evidence that a mutual mistake has occurred. Princeton Restoration Corp. v. Int'l Fid. Ins. Co., 338 F. Supp. 2d at 395.

At the hearing on June 30, 2009, defendants' counsel testified that during the negotiations that led to both Stipulations, he insisted on the addition of a notice and cure provision for all payments under the Stipulations. (Def. Ltr. at 3). He testified that originally he asked for a seven-day notice provision but accepted the five-day provision offered by plaintiffs' counsel. (Id.) He also testified that at no time during the negotiations did Mr. Schreiber discuss with him the intent that the notice and cure provision would apply only to payments under paragraph 2 or

14

to bounced checks in the context of current obligations. (Id.) Instead, it was his understanding that the notice provision would be without restrictions or limitations. (Def. Ltr. at 4). Defendants further note that at the hearing, plaintiffs' counsel never denied that during negotiations with the defendants' counsel, he did not raise the subject of limiting the notice to past payment obligations.

Plaintiffs' counsel, however, denies that he ever agreed to provide a notice and cure provision in reference to unpaid current contributions, and he testified credibly that his clients would never agree to such a provision which essentially would constitute a significant alteration to the CBA. More importantly, plaintiffs' counsel testified, and defendants' counsel did not contest, that a draft of the Stipulations, containing the same basic notice provision, was provided to defendants' counsel. Defendants' counsel not only reviewed the first draft of both Stipulations; he made suggestions for revisions, proposing that: (1) where a default notice is sent, it should be sent to both him and the defendants; and (2) that if a judgment is entered, no permanent injunction should be included. (Pl. Ltr. at 3; Pl. Greco Repl. ¶ 15; Pl. Elite Repl. ¶ 15). He did not, at that time, or upon receipt of the revised draft, ever object to the language in paragraph 4 that provided for notice and an opportunity to cure only in the event of bounced checks for current contributions and in the case of a default under paragraph 2. The fact that defendants' counsel had read and proposed changes to the very section of the Stipulations that is now at issue provides further support for plaintiffs' position that defendants were given ample opportunity to object to the terms of the Stipulation, and that no mutual mistake occurred.

Plaintiffs' counsel has also provided a copy of a letter dated October 20, 2008, written by defendants' counsel in response to plaintiffs' rejection of offers of judgment under Federal Rule

of Civil Procedure 68. (Pl. Ltr. at 4; Pl. Ltr. Ex. B.[12]). In this letter, defendants explicitly offer to pay all current contributions strictly in accordance with the terms of the CBA; they make no reference to a request for notice or for a cure period. The absence of any mention of a notice and cure period in this letter provides additional support for plaintiffs' contention that no mutual mistake occurred.[13]

Based on the record before the Court, there has been no clear showing that an oral agreement was reached between the parties that is not reflected in the Stipulations. Plaintiffs' counsel claims that no such agreement was ever reached, and that plaintiffs would not agree to modify the terms of the CBA. Plaintiffs note that to do so would create an exception to the CBA's requirement that employers pay contributions voluntarily on a timely basis without the need for reminders. Plaintiffs argue that there is no reason why the Trustees would agree to such a modification for employers who have failed to make timely payments in the past while

---

[12] Citations to Pl. Ltr. Ex. B refer to the letter sent by Alexander Miuccio to Avram Schreiber on October 20, 2008, submitted as Exhibit B to plaintiffs' counsel's July 10, 2009 letter brief.

[13] Defendants' counsel has argued that the October 20, 2008 letter submitted as plaintiff's Exhibit B should be excluded from the record since, under Federal Rule of Civil Procedure 68, unaccepted offers of judgment cannot be considered by a trial court except in a proceeding to determine costs. (Def. Ltr. at 5). Though little case law exists as to whether such discussions are admissible for purposes of establishing the contours of negotiation during the formation of a subsequent, unrelated contract, courts have generally held that the purpose of the Rule 68 prohibition is to ensure that a fact-finder does not "change his evaluation of the merits of a claim based upon the belated discovery of a rejected offer," since such an outcome would "undermine Rule 68's purpose of forcing plaintiffs to 'think very hard' before proceeding with their suits." Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 295 (6th Cir. 1989) (citing Marek v. Chesny, 473 U.S. 1, 5, 105 S. Ct. 3012, 3014 (1985)). As such, considering evidence of an unaccepted offer for judgment in the instant case would not appear to violate the central purpose of Rule 68's prohibition. However, even if the letter were to be excluded, the defendant has still failed to prove by clear and convincing evidence that a mutual mistake has occurred.

16

requiring compliant employers to adhere to a more stringent set of rules. The Court finds this to be a reasonable argument. Furthermore, the evidence shows that the defendants had ample opportunity to review the terms of the Stipulation and to request that the notice provision be modified to include current contributions. Despite the opportunity to review two drafts and to suggest changes, no question was raised about this issue. As such, defendants have failed to meet their burden of establishing by clear and convincing evidence that a mutual mistake had occurred in the formation of either contract. Therefore, no circumstances exist that would justify the reformation of either contract.

## CONCLUSION

Accordingly, it is respectfully recommended that default judgments be entered in favor of the plaintiffs in both cases. Given that defendants have raised issues regarding plaintiffs' request for damages, the parties shall appear for an inquest hearing before the undersigned on October 7, 2009 at 10:00 a.m.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 14, 2009

/s/ Cheryl Pollak
CHERYL L. POLLAK
United States Magistrate Judge